UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRANDON BELL,

       Petitioner,

v.                                    Case No. 2:13-CV-166
                                     HON. R. ALLAN EDGAR

DUNCAN MacLAREN,

       Respondent.

_____/

## OPINION & ORDER

Petitioner filed this § 2254 petition for writ of habeas corpus challenging the validity of his state court conviction for violations of his constitutional rights. PageID.6-7, 9-10, 12-13.  On February 16, 2009, Petitioner was convicted by a jury of two counts of armed robbery (MICH. COMP. LAWS § 750.529) and two counts of possession of a firearm during the commission of a felony (MCL § 750.227b).  PageID.1-2.  Petitioner was sentenced as a second habitual offender to nine to thirty years for the armed robbery convictions and two years for each felony firearm conviction. PageID.1.  Petitioner remains in the custody of the Michigan Department of Corrections (MDOC).

After his conviction, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals on September 24, 2009. PageID.2.  The Court of Appeals denied Petitioner's application and affirmed his conviction on July 27, 2010.  *Id.*  Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, which was denied on March 8, 2011.  *Id.*

Petitioner filed a motion for relief from judgment in the trial court pursuant to Michigan Court Rule 6.500, which was denied on June 11, 2012.  PageID.3.  Petitioner then sought review of his motion for relief from judgment from the Michigan Court of Appeals, who denied his request for relief on September 25, 2012.  PageID.4.  Petitioner next requested review of his motion from the Michigan Supreme Court, which was also denied on April 1, 2013.  *Id.*

Petitioner did not appeal to the United States Supreme Court; rather, he filed a habeas petition with this Court on May 10, 2013. ECF No. 1.  Petitioner maintains that his convictions were based on violations of his state and federal rights. Petitioner sets forth the following claims for relief:

I.  The evidence was insufficient to find Petitioner guilty beyond a reasonable doubt of armed robbery or assault with intent to rob.

II. Petitioner was denied a fair trial where the trial judge failed to *sua sponte* instruct the jury on the law of receiving and concealing stolen property in violation of MCL 750.535/or in the alterative counsel was ineffective for failing to request said instruction.

III. Petitioner was denied equal protection of the law under Baston v. Kentucky, 476 US 79 (1986) when the prosecutor exercised peremptory challenges to exclude a potential juror based on her race.

IV.  Petitioner submits that he is actually innocent of the charges for which he stands convicted of, where the video tapes show[] he was not part of the robbery.

V. Where trial counsel failed to investigate, or contact [a] witness, failed to present Petitioner's actual innocence defense, Petitioner was denied the effective assistance of counsel guaranteed [to] him under the Sixth Amendment to the United States Constitution.

VI. Where Petitioner has obtained newly presented evidence in the form of a sworn affidavit from Lovell Cambrick, who states that he was present when the robbery took place and that Petitioner played no role in the robbery of the victims, Petitioner Bell is entitled to a new

-2-

trial where he is actually innocent of the crime for which he stands convicted. Petitioner further submits that he was denied effective assistance of counsel where counsel failed to investigate and produce Mr. Cambrick at trial.[1]

PageID.6-7, 9-10, 12-13. Respondent filed a response to Petitioner's habeas application on December 4, 2013. ECF No. 9. Petitioner then filed a reply on January 17, 2014. ECF No. 24. The matter is now ready for a decision.

## I.

Petitioner filed this petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996. PUB. L. 104-132, 110 STAT. 1214 (AEDPA); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002) (noting that AEDPA prevents federal habeas "retrials" and ensures state convictions are made under state law). 28 U.S.C. § 2254(d) provides that any habeas application by a person in state custody shall not be granted in regards to any claim that has previously been adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

This Court may only consider "clearly established holdings" of the Supreme Court, not lower federal courts, in analyzing a petitioner's claim under § 2254. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). A

---

[1] Because claim VI and claim IV are related to actual innocence, they will be discussed at the same time.

decision of the state court may only be overturned if: (1) it applies a rule contradicting Supreme Court governing law, (2) it contradicts a set of facts materially indistinguishable from a Supreme Court decision, (3) it unreasonably applies correct Supreme Court precedent to the facts of the case, (4) it unreasonably extends Supreme Court legal principles where it should not apply, or (5) it unreasonably refuses to extend Supreme Court legal principle where it should apply. *Bailey*, 271 F.3d at 655; *see also Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" simply because that court decides, in its own judgment, that the relevant state decision applied federal law incorrectly. *Williams*, 529 U.S. at 410-11 (noting that it must instead determine if the state court's application of clearly established federal law was "objectively unreasonable"). This Court defers to state court decisions when the state court addressed the merits of petitioner's claim. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *see Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (allowing review of habeas application *de novo* when state court clearly did not reach the question). When applying AEDPA to state factual findings, factual issues by state courts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429.

After applying the standards under AEDPA to Petitioner's case, this Court concludes that Petitioner has not provided clear and convincing evidence that the state court improperly applied clearly established federal law to the facts of Petitioner's case.

## II.

Petitioner claims that his convictions are in violation of his constitutional rights. The Court reviews each of Petitioner's claims individually.

-4-

### A. Insufficient Evidence

Petitioner's first claim is that "[t]he evidence was insufficient to find Petitioner guilty beyond a reasonable doubt of armed robbery or assault with intent to rob." PageID.6. Specifically, Petitioner argues that the video clearly shows that Petitioner was holding a Coke can, not a gun, (which was mentioned by one of the witnesses during trial), meaning there is insufficient evidence that Petitioner was more than "merely present" during the commission of this armed robbery. PageID.160-161.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988). The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's

claims, "'the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Id*. at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

In the Michigan Court of Appeals' decision denying Petitioner's direct appeal, the court indicated that there was sufficient evidence for a jury to convict Petitioner of armed robbery:

> Defendant first challenges the sufficiency of the evidence to sustain his armed robbery convictions. We review sufficiency of the evidence claims de novo, viewing the evidence in the light most favorable to the prosecution to determine if the evidence was sufficient for a rational jury to find the defendant guilty beyond a reasonable doubt.
>
> The offense of armed robbery includes: "(1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute." The elements of aiding and abetting include: (1) the offense charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement to assist the commission of the offense; and (3) the defendant intended to commit the offense or had knowledge that the principal intended its commission at the time the defendant gave aid and encouragement.
>
> On appeal, defendant does not challenge any particular element of the charged offense, but rather asserts that the video recording of the Chicken Coop's surveillance system admitted at trial does not support the victims' testimony that defendant pointed a gun at them during the robbery. As previously stated, the video recording clearly depicted defendant with a handgun in his right hand. While the view was

-6-

blocked to a certain extent, it was reasonably clear that defendant pointed his handgun at one victim during the armed robbery. Further, a photograph admitted at trial depicted defendant pointing his handgun at the other victim. The video recording does not clearly show that defendant or coconspirator Robert Echols removed any property from the victims; however, both defendant and Echols were in very close proximity with the victims in the Chicken Coop's parking lot. Additionally, the video recording depicted Echols either frisking or reaching towards the victims' bodies at various points. Notably, the victims testified that defendant and Echols pointed handguns at the victims. While defendant pointed his handgun at the victims, Echols took a handgun and two necklaces from the victims. One victim testified that during the armed robbery, defendant repeatedly stated "[t]hat's how we do it in Chi-town." When the police photographed defendant on July 19, 2008, he was wearing one of the victim's necklaces. It was for the jury, as factfinder, to determine the weight of the evidence and credibility of the witnesses.

In this case, the elements of armed robbery were satisfied, where it was undisputed that Echols committed an assault on the victims by using his handgun to take their property. On appeal, defendant claims that he put his handgun away, and merely observed Echols rob the victims. However, the record directly refutes defendant's claim. The trial testimony, video recording, and photographs demonstrate that defendant performed acts to assist Echols in the armed robbery, namely, defendant used a handgun to assist in facilitating the armed robbery. The evidence supports that defendant was aware of Echols' intent to commit armed robbery at the time defendant gave assistance. "An aider and abettor's state of mind may be inferred from all the facts and circumstances." "Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." Here, defendant threatened the victims inside the Chicken Coop by stating that he would put a hole in their heads. As noted previously, he clearly participated in the execution of the armed robbery. We defer to the jury's credibility determinations and any conflicts in the evidence must be resolved in favor of the prosecution. Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found that all of the elements of armed robbery under an aiding and abetting theory were proved beyond a reasonable doubt.

Defendant, in his standard 4 brief, also challenges the sufficiency of

> the evidence . . . . Defendant's challenge[] lacks merit. As previously stated, the evidence admitted at trial coupled with the testimony of the victims was more than sufficient evidence to sustain defendant's armed robbery convictions under an aiding and abetting theory. Contrary to defendant's assertions, the record is devoid of any evidence that defendant was merely a spectator, or that he was innocent.

*People v. Bell*, No. 290691, 2010 WL 2925349, at **1-3 (Mich. Ct. App. July 27, 2010) (citations omitted).  The Courts of Appeals' decision is thorough and complete, and it does not improperly apply a rule that contradicts Supreme Court precedent, nor does it contradict a set of facts that are materially indistinguishable from a Supreme Court decision.  *Bailey*, 271 F.3d at 655.

As the appellate court noted, there is sufficient evidence for a reasonable trier of fact to conclude that Petitioner was more than merely present during the commission of the armed robbery.  *See Jackson*, 443 U.S. at 324 n.16 (noting the habeas court examines the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law); *see also Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) ("[M]ere presence, or even knowledge, that a crime is about to be committed is insufficient to prove guilty under an aiding-and-abetting theory [for armed robbery in Michigan].").  For example, Petitioner was identified in a lineup by one of the victims (ECF No. 14 at 67-68), was witnessed wearing one of the stolen necklaces at a club (ECF No. 14 at 64-65), was witnessed to have had a gun during the night of the robbery (ECF No. 14 at 80-81), and was said to have threatened to "put a bullet" in the heads of the victims on the night of the crime (ECF No. 14 at 78).  Based on this evidence, and the appellate court's recitation of the evidence presented at trial, it is clear that a rational trier-of-fact could conclude that Petitioner was more

than merely present during the armed robbery. *See Jackson*, 443 U.S. at 319, 334 (noting the standards as: "[A]fter viewing the evidence in the light most favorable to the prosecution, [could] *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[?]") (emphasis in original).  As a result, Petitioner's first claim fails.

### B. Jury Instruction

Petitioner's next claim has two parts: (1) "Petitioner was denied a fair trial where the trial judge failed to *sua sponte* instruct the jury on the law of receiving and concealing stolen property in violation of MCL 750.535"; or, in the alternative (2) Petitioner's "counsel was ineffective for failing to request said instruction." PageID.7.  Petitioner claims that because "[t]here was testimony from the victim that a month or so after the [armed robbery] he saw Petitioner wearing a necklace taken from the robbery . . . . [that] there was evidence to support an instruction on Receiving and Concealing Stolen Property." *Id.*  Moreover, he claims that the jury would not have convicted him of armed robbery if they had been able to consider the crime of receiving and concealing stolen property.  *Id.*

While there is a persuasive argument that Petitioner has procedurally defaulted this claim by waiving any objections to the jury instructions during trial, the Court will decide this issue on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003) (noting that where the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default); *see also Cone v. Bell*, 243 F.3d 961, 971 (6th Cir. 2001), *rev'd on other grounds*, *Bell*, 535 U.S. at 685; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

As an initial matter, Petitioner's jury instruction claim is not cognizable on habeas review. The Supreme Court has held that courts must instruct the jury of any lesser-included offenses in *capital cases* when failure to do so would result in the jury being given an "all or nothing" choice of convicting or acquitting the defendant. *Beck v. Alabama*, 447 U.S. 625, 637-38 (1980) (noting the court must raise the instruction *sua sponte*). However, "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). A trial court's failure to raise a lesser included offense, even if one is requested, is in general "not an error of such magnitude to be cognizable in federal habeas corpus review." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1980) (en banc). Moreover, there is no clearly established Supreme Court precedent requiring "a trial court to provide a [] lesser included offense instruction in the non-capital context, as is required for habeas relief under § 2254(d)(1)." *Brewster v. Davis*, No. 06-10766-BC, 2011 WL 1135755, at *6 (E.D. Mich. Mar. 28, 2011) (citation omitted).

Even if this claim were cognizable on habeas review, Petitioner's claim would fail because he has not shown that the omitted jury instruction rendered the verdict fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991) ("The only question for us is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'") (citations omitted). Petitioner raised this claim in his appeal of right to the Michigan Court of Appeals. The appellate court was the last court to issue a reasoned opinion on this claim, and the court denied the claim for the following reasons:

> Next, defendant asserts that the trial court should have sua sponte issued a jury instruction on receiving and concealing stolen property, MCL 750.535, or alternately, that defense counsel rendered

-10-

ineffective assistance of counsel for failing to request such an instruction. We conclude that the allegation of instruction error is waived, because defense counsel expressed satisfaction with the trial court's jury instructions. Moreover, defendant's allegation of instructional error lacks merit, because the trial court was not required to sua sponte instruct the jury on the uncharged offense of receiving or concealing stolen property.

A trial court's jury instructions must include all of the elements of the charged offense, and must not exclude any material issues, defenses, or theories which are supported by the evidence. This Court "examines the instructions as a whole, and, even if there are some imperfections, there is no basis for reversal if the instructions adequately protected the defendant's rights by fairly presenting to the jury the issues to be tried."

A trial court is generally under no obligation to issue a jury instruction on lesser-included offenses. Moreover, receiving and concealing stolen property is not a necessarily included lesser offense or even a cognate lesser offense of the charged offense. We reject defendant's argument that the trial court should have issued sua sponte a jury instruction on the offense of receiving or concealing stolen property, and we find that the trial court's jury instructions included all of the elements of the charged offense; they did not exclude any material issues, defenses, or theories as supported by the evidence. Accordingly, defendant has failed to establish error and certainly has not established plain error.

Defendant also asserts that defense counsel was ineffective for not requesting an instruction on receiving or concealing stolen property. To sustain a claim of ineffective assistance of counsel, a defendant must prove that defense counsel's "performance was deficient" and that deficiency "prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687; 104 S.Ct. 2052; 80 L.Ed.2d 674 (1984). Decisions regarding what instructions to request are left to defense counsel's discretion as a matter of trial strategy, and we will not second-guess such decisions. The trial court's jury instructions included all of the elements of the charged offense, and they did not exclude any material issues, defenses, or theories as supported by the evidence. Moreover, as discussed previously, there is no indication that defendant was entitled to a jury instruction on an uncharged offense. It is well settled that counsel is not ineffective for failing to advocate a meritless position.

*Bell*, 2010 WL at 2925349, \*3 (citations omitted).  The appellate court's decision is thorough, complete, and consistent with Michigan law; and there is no Supreme Court precedent to the contrary. *See Bailey*, 271 F.3d at 655; *see also Campbell*, 260 F.3d at 541 ("[T]he Constitution does not require a lesser-included offense instruction in non-capital cases."); *cf. Beck*, 447 U.S. at 637-38 (noting that in capital cases, a trial court must, *sua sponte*, include a lesser included offense instruction). In addition, Petitioner's trial attorney was not ineffective under the *Strickland v. Washington*, 466 U.S. 668 (1984) standard by choosing not to request this instruction.  *See, e.g., Tinsley v. Million*, 399 F.3d 796, 808 (6th Cir. 2005) (noting that trial counsel was not ineffective by failing to request a lesser included offense since "it was a permissible exercise of trial strategy").  As a result, Petitioner has not demonstrated that not presenting this jury instruction rendered his verdict fundamentally unfair.  Thus, Petitioner's second claim fails.

### C. Peremptory Challenge

Petitioner's third claim is that he was "denied equal protection of the law under Batson v. Kentucky, 476 US 79 (1986) when the prosecutor exercised peremptory challenges to exclude a potential juror based on her race."  PageID.9.  Petitioner argues that the prosecutor "used her peremptory challenged to exclude the only African American from the jury based on her race," and that her only reasoning for dismissing that juror "was because she felt the juror had not given a complete and forthright answer." *Id.*

In *Batson v. Kentucky*, 476 U.S. 79, 96, (1986), the Supreme Court articulated a three-step analysis to be applied to an Equal Protection Clause claim that purposeful discrimination occurred in the selection of the petit jury based solely on the prosecutor's exercise

of his peremptory challenges at trial. *See United States v. Bartholomew*, 310 F.3d 912, 919 (6th Cir. 2002). First, the Defendant must establish a prima facie case of racial discrimination. *See United States v. Copeland*, 321 F.3d 582, 599 (6th Cir. 2003). This requires an initial showing that "the defendant . . . is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Batson*, 476 U.S. at 96 (citation omitted). "[T]he defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Id.* (quoting *Avery v. Georgia*, 345 U.S. 559, 562 (1953)). Ultimately, Petitioner, relying on this presumption and other facts, must "raise an inference that the prosecutor used [a peremptory challenge] to exclude the veniremen from the petit jury on account of their race." *Id.*

Second, once the Defendant has raised the necessary inference, "the burden shifts to the state to come forward with a neutral explanation for challenging [potential] jurors." *Id.* at 97. "The government is not required to persuade the court that its reasons for dismissing the juror were well-founded; rather it need only demonstrate that its reasons were race-neutral." *Copeland*, 321 F.3d at 599. More specifically, "[t]he second step of this process does not demand an explanation that is persuasive or even plausible. 'At this . . . step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991)).

Third, the party opposing the strike must demonstrate that the prosecutor's

purported explanation is merely a pretext for racial motivation.  *See McCurdy v. Montgomery County*, 240 F.3d 512, 521 (6th Cir. 2001) (describing the *Batson* test).  Ultimately, the court must determine "whether the defendant has carried his burden of proving purposeful discrimination."  *Hernandez*, 500 U.S. at 359.  In making this determination, the Court presumes that the facially valid reasons proffered by the prosecution are true.  *Id.* at 359-60.  Racially discriminatory purpose or intent must be affirmatively shown by the opponent of the strike.  *Id.* at 360.  The ultimate burden of persuasion always remains with the opponent of the strike.  *See United States v. McFerron*, 163 F.3d 952, 955 (6th Cir. 1998).

Notwithstanding this three-part test, however, the Supreme Court has held that the question of whether a prima facie case has been established becomes moot once a court rules on the ultimate question under *Batson* of whether there was purposeful discrimination. *Hernandez*, 500 U.S. at 360; *Lancaster*, 324 F.3d at 432-33.  "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court had ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot."  *Hernandez*, 500 U.S. at 359; *Lancaster*, 324 F.3d at 433.

Petitioner raised this equal protection claim in his direct appeal to the Michigan Court of Appeals.  The appellate court stated the following when denying Petitioner's claim:

> Fourth, defendant presents a fair-cross-section challenge related to his jury but wrongly relies on *Batson* legal principles to support his argument. Based on our thorough review of the record, we conclude that even a generous reading of this issue provides no relief for defendant. Here, he failed to set forth a prima facie violation of the fair-cross-section requirement, where there is no indication that African-Americans were underrepresented in the venire or jury pool, and that underrepresentation was the result of systematic exclusion. *Duren v. Missouri*, 439 U.S. 357, 364; 99 S.Ct. 664; 58 L.Ed.2d 579

(1979); *People v. Hubbard (After Remand)*, 217 Mich. App. 459, 474; 552 NW2d 493 (1996). Further, the trial court did not err in determining that the prosecutor dismissed an African-American juror for credible and race neutral reasons. *People v. Knight*, 473 Mich. 324, 344; 701 NW2d 715 (2005).

. . . .

[D]efendant failed to establish a prima facie violation of the fair-cross-section requirement, where there is no indication that African-Americans were underrepresented in the venire or jury pool, and that underrepresentation was the result of systematic exclusion. *Duren*, 439 U.S. at 364. With respect to the *Batson* challenge, because the prosecutor's explanation was based on something other than the race of the juror, the trial court properly deemed the explanation as race neutral where no discriminatory intent was inherent in that explanation. *Knight*, 473 Mich. at 337.

*Bell*, 2010 WL 2925349, at **5, 7 (footnote omitted). Again, the Michigan Court of Appeals' decision on this issue is thorough and complete, and it does not inappropriately apply federal law to the facts of Petitioner's case. *Bailey*, 271 F.3d at 655; *see also Lancaster*, 324 F.3d at 429.

In regard to the first *Batson* step, Petitioner has made a prima facie showing of discrimination. Petitioner points to the prosecutor's voir dire questions posed to Juror 12 (a Caucasian male) and Juror 13 (an African-American female). PageID.161, 163. Petitioner claims that after both jurors indicated that they had been to the restaurant where the robbery took place, the prosecutor engaged in discriminatory questioning by asking several more questions to Juror 13 than to Juror 12. PageID.163. In addition, Petitioner noted that the prosecutor failed to ask Juror 13 whether she had been in a courtroom before. PageID.161-162. As a result, Petitioner claims that the prosecutor clearly used her peremptory challenge to exclude Juror 13 based on her race. PageID.161-163. Because a "prosecutor's questions and statements during *voir dire* examination" and exercise of challenges "may support" an inference of a discriminatory

-15-

purpose, Petitioner has met the first prong of his *Batson* claim. *Batson*, 476 U.S. at 97.

Since Petitioner showed a *prima facie* case of a discriminatory peremptory challenge, the burden shifts to Respondent to "come forward with a neutral explanation for challenging [this juror]." *Batson*, 476 U.S. at 97. During voir dire, the trial judge asked that the prosecutor to explain her reasons for excusing Juror 13, to which the prosecutor stated:

> Prosecutor: Your Honor, I had asked [Juror 13] during my questions what contact she had had with law enforcement, whether she had ever been in a courtroom before, what kind of experiences she had with the criminal justice system, and she indicated she was a victim in a domestic assault case. She did not indicate that she had sat through a trial, and had been in the courthouse quite recently for a trial. And I felt that I wanted to dismiss her because she had not given a complete and, I felt, forthright answer.
>
> . . . .
>
> Trial Judge: The . . . rationale proffered by the prosecutor, and the Court sustains as a legitimate basis, there were inquiries as to contact, presence in the courtroom, and the juror didn't say – she didn't disclose that she had been a juror, and I think that that's a fair non-discriminatory reason that has been articulated by the prosecution . . . . I find it to be a non-discriminatory basis, and I respectfully decline to sustain the Batson objection substantively in the event that it is procedurally appropriate.

ECF No. 13 at 109-112. The prosecutor excused Juror 13 because the prosecutor did not find her to be forthcoming in her answers, and the trial court sustained that position. *Id.* As a result, the second step of *Batson* is satisfied.

Finally, to satisfy the third prong of *Batson*, Petitioner must show that the prosecutor's explanations in step two are a pretext for racial motivation. *See McCurdy*, 240 F.3d at 521 (describing *Batson* test). Petitioner has not met this burden. Petitioner has not affirmatively set forth any racially discriminatory purpose or intent by the prosecutor in striking

-16-

Juror 13.  *See Hernandez*, 500 U.S. at 359-60.  As a result, Petitioner has not "carried his burden of proving purposeful discrimination."  *Id.* at 359.  Therefore, Petitioner's *Batson* claim fails.

### D.  Actual Innocence and New Evidence

Next, Petitioner argues that "he is actually innocent of the charges for which he stands convicted of," and he requests that the Court consider his sixth claim (regarding newly discovered evidence) when evaluating his actual innocence.  As such, the Court will review both Petitioner's actual innocence claim and newly discovered evidence claim at this time.  Petitioner claims that he is actually innocent because the "video tapes show[] he was not part of the robbery . . . . [and] that Petitioner Bell was merely present," and because Petitioner "has obtained newly presented evidence in the form of a sworn affidavit from Lovell Cambrick, who states that he was present when the robbery took place and that Petitioner played no role in the robbery of the victims." PageID.10, 13.

Petitioner's actual innocence claims are not cognizable on habeas review because Petitioner does not "seek excusal of a procedural error so that he may bring an independent constitutional claim challenging his convictions," (such as procedural default); rather, Petitioner "argues that he is entitled to habeas relief" because newly discovered evidence shows that his conviction is factually incorrect. *See Herrera*, 506 U.S. at 404. The Supreme Court has held that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera*, 506 U.S. at 400; *see also McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). "This rule is grounded in the

principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation

of the Constitution–not to correct errors of fact." *Herrera*, 506 U.S. at 400.  "Freestanding claims

of actual innocence [outside capital cases] are thus not cognizable on federal habeas review,

absent independent allegations of constitutional error at trial." *Jackway v. Woods*, No. 15-CV-

11491, 2016 WL 304739, at *9 (E.D. Mich. Jan. 26, 2016) (citing *Cress v. Palmer*, 484 F.3d

844, 854-55 (6th Cir. 2007) (collecting cases)); *see also Wright v. Stegall*, 247 Fed. App'x 709,

711 (6th Cir. 2007). As a result, Petitioner is not entitled to relief under the available Supreme

Court precedent.

       Nevertheless, even if this were a tenable actual-innocence claim, the Supreme

Court has held that actual innocence pleas are rare and seldom met.  *Schlup v. Delo*, 513 U.S.

298, 321, 329 (1995); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (noting that the *Schlup*

standard is seldom met and demanding). Moreover, Petitioner would have to show that in light of

his new evidence (an affidavit), "no reasonable juror would have found the defendant guilty."

*Schlup*, 513 U.S. at 329.  Here, Petitioner simply claims that the video tape showing him holding

a gun was misinterpreted by the trial court, as he claims he did not hold a gun during the armed

robbery.  PageID.10.  In addition, he claims that Mr. Cambrick's affidavit further supports the

notion that Petitioner was merely present at the scene of the crime.  PageID.13.  However,

affidavits containing new statements from witnesses years after the crime and trial are inherently

suspect, and these statements are to be viewed with a "degree of skepticism." *Schlup*, 513 U.S. at

331; *see also Herrera*, 506 U.S. at 423 (O'Connor, J., concurring). Therefore, Petitioner's

evidence, at best, would provide a jury with one more witness (in addition to himself) that

believed Petitioner was merely present during the armed robbery.  This information alone is

insufficient to create reasonable doubt, or show that it is more likely than not that a jury would find him not guilty, especially considering that Petitioner's attorney made this argument to the jury during trial. *See Schlup*, 513 U.S. at 329. As a result, Petitioner's claims of actual innocence fail.

### E. Ineffective Assistance of Counsel

Petitioner's next claim is that his trial counsel was ineffective for failing to: (1) "investigate, or contact witness [Lovell Cambrick]," and (2) "present Petitioner's actual innocence defense." PageID.12.

To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

-19-

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Furthermore, where counsel's performance did not fall below an objective standard of reasonableness, the court need not reach the question of prejudice.  *See Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697) ("When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'").  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Strickland*, 466 U.S. at 697.

### i. Failure to Investigate

In regard to Petitioner's first claim of ineffective assistance of counsel (failure to investigate and present a witness at trial), Petitioner has not shown that his attorney performed deficiently under the first *Strickland* prong.  It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular

investigations unnecessary." *Strickland*, 466 U.S. at 691. This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). However, in general, "[d]ecisions as to what evidence to present and whether to call or question witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Chegwidden v. Kapture*, 92 Fed. App'x 309, 311 (6th Cir. 2004); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."); *Jones v. Davis*, No. 05CV70897DT, 2006 WL 1452505, at *6 (E.D. Mich. May 23, 2006) (citing *People v. Jones*, No. 237174, 2003 WL 22138013, at **3-4 (Mich. Ct. App. Sept. 16, 2003) ("A defense is substantial if it might have made a difference in the outcome of the trial.")).

Here, Petitioner has not overcome the strong presumption that his trial attorney strategically decided not to call Lovell Cambrick to testify at trial. *Strickland*, 466 U.S. at 689. It is clear, based on Petitioner's attorney's performance at trial, that Petitioner was not deprived of a defense when his attorney chose not to call Mr. Cambrick to testify. For example, Petitioner's attorney pursued the defense of mere presence (which is the theory Petitioner claims Mr. Cambrick would have supported) as he thoroughly cross-examined both of the victims to the robbery and an officer. ECF No. 14 at 100-133, 168-212, 224-233. With that in mind, it would have been redundant to call Mr. Cambrick to testify when Petitioner's attorney had already thoroughly presented the defense of mere presence to the jury. *See* PageID.142-143. Based on this information, it is clear that Petitioner was not deprived of a substantial defense based on his

attorney's decision not to call Mr. Cambrick to testify at trial—meaning his attorney did not perform deficiently.  *See Strickland*, 466 U.S. at 689 (noting the petitioner mut overcome the strong presumption that his attorney's "challenged action [or inaction] might be considered sound trial strategy.").  Because Petitioner has not demonstrated deficient performance under *Strickland*, the Court need not touch on the second prong (prejudice).  *See Campbell*, 364 F.3d at 730 (quoting *Strickland*, 466 U.S. at 697).

### ii. Actual Innocence Defense

Petitioner's second claim of ineffective assistance of counsel alleges that his trial counsel was ineffective by not pursuing the "actual innocence" defense at trial. PageID.12-13. Specifically, Petitioner claims that his attorney should have argued that he was holding a Coke bottle, not a gun, and that he played no part in the robbery. PageID.12.

The Sixth Amendment provides a criminal defendant with the right "to have the Assistance of Counsel for his defense."  U.S. CONST., amend. VI.  However, the right of an accused to present a defense is not unlimited, and it may be subject to reasonable restrictions. *See Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998).  "Where defense counsel entirely fails to subject the prosecution's case to 'meaningful adversarial testing,' there has been a constructive denial of counsel, and a defendant need not make a showing of prejudice to establish ineffective assistance of counsel." *Haywood v. Booker*, No. 2:06-CV-10927, 2009 WL 817647, at *5 (E.D. Mich. Mar. 27, 2009) (quoting *Moss v. Hofbauer*, 286 F.3d 851, 860 (6th Cir. 2002) and *United States v. Cronic*, 466 U.S. 648, 659 (1984)). This presumption "applies only where defense counsel *completely* or *entirely* fails to oppose the prosecution throughout the guilt or penalty phase *as a whole*." *Benge v. Johnson*, 474

F.3d 236, 247 (6th Cir. 2007) (emphasis in original) (citing *Bell*, 533 U.S. at 697).

   Here, Petitioner has failed to demonstrate that his attorney performed deficiently by failing to present the "actual innocence" theory of defense.  In fact, upon review of the transcripts, it appears as though Petitioner's attorney argued precisely what Petitioner is currently asking for in his habeas petition. For example, Petitioner claims his attorney should have argued to the jury that Petitioner was holding a Coke bottle, not a gun, before the necklaces were stolen on the night of the robbery.  PageID.12.  However, his attorney *did* make this argument during his opening statement (ECF No. 14 at 30-31 ("[T]he video will show that [Petitioner] did not participate [in the robbery]," "[Petitioner] did not take the necklaces," and although it may look like Petitioner was holding something in his hands for a second and a half in the video, he physically could not have been)), during cross-examination of a victim (ECF No. 14 at 120-121 ("Q: What did you see? A: I don't know, it's not clear enough. Maybe a Coke." . . . . "Q: How about now? A: Yes, it looks like a Coke. Q: All right, he had a Coke in his left hand, correct? A: Mm-hmm.")), and in his closing argument (ECF No. 14 at 48 ("The other things I want you to keep aware of is that my client had a drink in his left hand pretty much the whole time. Okay? He had it inside, and he had it outside."), 50 ("I . . . argue to you [in] the strongest sense that I possibly can my client didn't participate.").  Therefore, Petitioner's attorney clearly set forth the defense that Petitioner now claims he should have argued. As a result, Petitioner has not demonstrated deficient performance since he has not shown that he was deprived of a substantial defense. *See Campbell*, 364 F.3d at 730 (quoting *Strickland*, 466 U.S. at 697) ("When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'"). Consequently, Petitioner's second

-23-

ineffective assistance of counsel claim fails.

III.

This Court concludes that all of Petitioner's claims are without merit.  Should Petitioner choose to appeal this action, the Court must determine whether a certificate of appealability may be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Each issue must be considered under the standards set forth in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.  The Court examined each of Petitioner's claims under the *Slack* standard and concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong.  Therefore, this Court **DENIES A CERTIFICATE OF APPEALABILITY** as to each issue raised by Petitioner.

For the same reasons the Court dismissed this action, the Court will certify that any appeal by Petitioner from the Court's decision and judgment would be frivolous and not taken in good faith, pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24.  Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is hereby **DISMISSED**.

In summary, Petitioner's habeas application (ECF No. 1) pursuant to 28 U.S.C. § 2254 is **DISMISSED WITH PREJUDICE**.  A judgment consistent with this Opinion and Order

-24-

will be entered.

        **SO ORDERED**.


                      _____*/s/ R. Allan Edgar*_____
                      R. ALLAN EDGAR
                      UNITED STATES DISTRICT JUDGE

Dated:  3/22/2016